UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
CARY RATNER,

                        Plaintiff,

                                              <u>MEMORANDUM & ORDER</u>
          -against-                           13-CV-6278(JS)(ARL)
                                              14-CV-7337(JS)(AYS)
LINDA ROBINSON, MITCHELL SHAPIRO,
COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, DETECTIVE BRETT NORDMAN,
in his individual and official
capacity, DETECTIVES JOHN DOE 1-10,
in their official and individual
capacities, and NASSAU COUNTY OFFICE
OF THE DISTRICT ATTORNEY,

                        Defendants.
-----------------------------------X
SETH RATNER,

                        Plaintiff,

          -against-

LINDA ROBINSON, MITCHELL SHAPIRO,
COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, DETECTIVE BRETT NORDMAN,
in his individual and official
capacity, DETECTIVES JOHN DOE 1-10,
in their individual and official
capacities, and NASSAU COUNTY OFFICE
OF THE DISTRICT ATTORNEY,

                        Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff
Cary Ratner:        Cary Ratner, <u>pro se</u>
                    38 Overlook Terrace
                    East Hills, New York 11577

For Plaintiff
Seth Ratner:        Seth Ratner, <u>pro se</u>
                    38 Overlook Terrace
                    East Hills, New York 11577

```
For Defendants
Linda Robinson:        Joseph W. Ryan, Esq.
                       Joseph W. Ryan, Jr. P.C.
                       225 Old Country Road
                       Melville, New York 11747

Mitchell Shapiro:      Argyrios Petropoulos, Esq.
                       William L. Schleifer, Esq.
                       Catalano Gallardo & Petropoulos LLP
                       100 Jericho Quadrangle
                       Jericho, New York 11753

County Defendants:     Thomas Lai, Esq.
                       Andrew Scott, Esq.
                       Nassau County Attorney Office
                       1 West Street
                       Mineola, New York 11501
```

SEYBERT, District Judge:

Pro se plaintiff Cary Ratner commenced an action (Case No. 13-CV-6278) against defendants Linda Robinson ("Robinson") and Mitchell Shapiro ("Shapiro"), and Nassau County, the Nassau County Police Department, Detective Brett Nordman, and the Nassau County District Attorney's Office (collectively, the "County Defendants"), asserting claims of false arrest, malicious prosecution, and abuse of process pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as related state law claims sounding in negligence, false arrest, malicious prosecution, and fraud (the "C. Action"). Subsequently, pro se plaintiff Seth Ratner, Cary's son, commenced an action (Case No. 14-CV-7337) against Robinson, Shapiro, and the County Defendants asserting identical claims based on substantially similar facts (the "S. Action"). For the reasons set forth below, the Court sua sponte ORDERS that the Cary

Ratner Action ("C. Action") and the Seth Ratner Action ("S. Ratner") be CONSOLIDATED.

Presently pending before the Court are the following motions: (a) motions to dismiss the Amended Complaint filed by Robinson and Shapiro in the C. Action (Docket Entries 42 and 46); (b) motions to dismiss the Complaint filed by Robinson and Shapiro in the S. Action (Docket Entries 37 and 39); (c) Robinson's consolidated motion for sanctions (Docket Entry 56, C. Action; Docket Entry 47, S. Action); and (d) Shapiro's cross motion for sanctions (Docket Entry 58, C. Action; Docket Entry 49, S. Action). Cary Ratner and Seth Ratner (collectively, "Plaintiffs") have opposed the pending motions. The County Defendants have not filed submissions in connection with any pending motions.

BACKGROUND[1]

I.  Underline{Factual Background}

   A. <u>The State Court Action</u>

In or about 2012, Cary Ratner commenced an action against Robinson, his son's now ex-mother-in-law, in the Supreme Court of the State of New York, Ratner v. Robinson, Nassau County Index No. 5607/2012 (the "State Court Action"). In his Verified Complaint

---

[1] The following facts are taken from the Amended Complaint in the C. Action and the Complaint in the S. Action and are presumed to be true for the purposes of this Memorandum and Order. The allegations respecting Cary Ratner's state court action are taken from Robinson's motion for sanctions and do not appear to be disputed by Plaintiffs.

3

in the State Court Action (the "State Court Complaint"), Cary Ratner alleges that while he and Robinson were at a pretrial conference for their children's matrimonial matter, Robinson "feigned a meltdown, screaming that she wanted [Cary Ratner] arrested and she attracted the attention of the [court] officers," which ultimately resulted in Cary Ratner being escorted from the building and barred from attending future court appearances. (Robinson's Sanctions Br., C. Action, Docket Entry 56-2, Ex. A., State Court Compl., at ¶¶ 3-20.)[2]  The State Court Complaint avers that Robinson's behavior was a "technique" she utilized in her second divorce, where she purportedly "concocted several 'domestic violence' incidents," that prevented her ex-husband from having contact with their daughter for eleven years (Robinson's Sanctions Br., C. Action, Ex. A, ¶ 24.)

The State Court Complaint also details an incident where Robinson was allegedly "abusive" to Cary Ratner's business accountant in an attempt to obtain Seth Ratner's tax returns, and alleges that Robinson filed a false police report stating that Cary Ratner "made the shape of a gun with his fingers and stated, 'Your dead.'"  (Robinson's Sanctions Br., C. Action, Ex. A ¶¶ 34-43.)

---

[2] Robinson and Shapiro filed their respective sanctions motions under both docket numbers.  For ease of reference, the Court will refer to Robinson's and Shapiro's sanctions motions filed in the C. Action.

Robinson alleges that she filed an Answer and Counterclaim asserting a claim for defamation based on Cary Ratner mailing copies of the State Court Complaint to "at least five" of her superiors at her employer. (Robinson's Sanctions Br., C. Action, at 3.) Robinson was represented by Shapiro in the State Court Action. (Robinson's Sanctions Br., C. Action, Ex. B, at 8.)

Cary Ratner was sanctioned for failing to comply with discovery and precluded from arguing his claims at the trial in the State Court Action. (Robinson's Sanctions Br., C. Action, Ex. C; Ex. D at 2.) Additionally, Robinson's motion for summary judgment in the State Court Action was granted. The state court construed Cary Ratner's claims as causes of action for defamation or intentional infliction of emotional distress, and prima facie tort. (Robinson's Sanctions Br., C. Action, Ex. D at 3-4.) The parties proceeded to trial on Robinson's counterclaim and a jury awarded Robinson $60,000 in compensatory damages and $35,000 in punitive damages. (Robinson's Sanctions Br., C. Action, at 4; Ex. E.)

B.  Robinson's Complaints Against Seth Ratner

Robinson filed a Domestic Incident Report alleging that a Range Rover ran her off the road on September 3, 2012. (Compl.,

S. Action, Ex. L at 99.)[3]  In her supporting deposition filed on

that same date, Robinson alleges the following:

> As I approached my home, I observed a vehicle
> cross the double yellow line into my lane and
> drove    directly    at    my    vehicle    and
> [indiscernible].    I    swerved    to    avoid    a
> collision.  As the vehicle passed I observed
> that it was a gray range rover.  My son in law
> drives  the  same  type  of  vehicle  which  I
> observed.  This incident placed me in great
> fear  and  I  want  the  responsible  party
> arrested. . . .

(Compl., S. Action, Ex. L.)

Robinson    filed    an    additional    supporting    deposition

respecting this incident.  (Compl., S. Action, Ex. I, at 88.)  In

her  supporting  deposition  filed  on  January 14,  2013,  Robinson

alleges the following:

> I recognized the silver Land Rover as that of
> my son in law, Seth Ratner.  Seth was driving
> that car.  I saw him behind the wheel driving.
> Seth  drives  that  car  and  I  recognized  it.
> After he ran me off the road I pulled into my
> neighbors  driveway  and  backed  out  to  chase
> him.  I was able to follow him close enough to
> read his license plate number DXE-6293.  If I
> hadn't  swerved  into  my  neighbors  driveway  I
> would have eithe[r] hit him on the curb and
> lawn . . . ."

(Comp., S. Action, Ex. I.)

---

[3] The page numbers provided for the Exhibits to the S. Action
Complaint are those generated by the Electronic Case Filing
System.

Robinson also filed police reports containing "false allegations that the Plaintiff Seth Ratner, was throwing trash on her lawn." (Compl., S. Action, ¶ 35.)

C.  Interactions Between the Ratners and Nordman

Seth Ratner alleges that in November, 2013, on the day after he was terminated from his employment "[d]ue to continued problems emanating from the contentious divorce," Detective Nordman entered the offices of Seth's former employer, East Hills Instruments, and asked the receptionist if Seth still worked there. (Compl., S. Action, ¶¶ 32-33.)

The Complaint also alleges that on January 8, 2013, Detective Nordman and another detective arrived at Seth Ratner's residence. (Compl., S. Action, ¶ 41.) Detective Nordman accused Seth Ratner of throwing trash on Robinson's lawn and claimed that he had a video that documented the trash throwing. (Compl., S. Action, ¶ 43.) When Seth Ratner denied throwing trash on Robinson's lawn and asked what he was allegedly throwing, Detective Nordman replied that it was "a soda bottle and a candy bar wrapper." (Compl., S. Action, ¶ 43.) Detective Nordman instructed Seth Ratner that he should "consider this a warning." (Compl., S. Action, ¶ 45.)

On January 9, 2013, Cary Ratner called Detective Nordman to discuss his visit with Seth Ratner. (Compl., S. Action, ¶ 46.) Cary Ratner wrote Detective Nordman a letter that memorialized

their conversation.  (Compl., S. Action, Ex. F at 80.)  Detective Nordman responded with a letter that stated, in relevant part, that prior to January 9, 2013, he "did not know who Ms. Robinson's attorney was and at this time [was] not familiar with him." (Compl., S. Action, ¶ 47; Ex. H at 86.)

D. <u>Seth Ratner and Linda Robinson Family Court Proceedings</u>

In or about 2012, Robinson and Seth Ratner were involved in Family Court proceedings against each other.  (Compl., S. Action, ¶¶ 7, 8.)  Seth Ratner alleges that at one Family Court proceeding, Robinson falsely accused him of taking her photograph with a cell phone.  (Compl., S. Action, ¶ 7.)  As a result of Robinson's complaint, "three court officers surrounded [Seth Ratner], dragged him into a room, and he was thrown against a wall, and searched twice, while Defendant's [sic] Shapiro and Robinson screamed that he had it and that they wanted him arrested." (Compl., S. Action, ¶ 7.)  Seth Ratner alleges that a phone was not discovered and that following the hearing, an armed escort escorted him to the door for his protection.  (Compl., S. Action, ¶ 7.)  This allegation was the subject of a June 2012 Family Court proceeding and the Complaint quotes a portion of the transcript that states "Ms. Robinson's claim, which is ultimately false because there's nothing in any Order of Protection that says that a Person A may not take a photo of Person B, in no way could such

photo taking, even if it occurred, could that have been a violation." (Compl., S. Action, ¶ 9.)

On January 9, 2013, Seth Ratner sought an Order of Protection from Family Court against Robinson in connection with her repeated filing of "false unsupported police reports and in fear that he would be falsely arrested, based on threats sent by his soon to be ex-wife." (Compl., S. Action, ¶ 54.) Seth Ratner alleges that on January 7, 2013, he received a text messages from his soon to be ex-wife stating, in relevant part, "[t]he fact is that you are going to be thrown in jail" and "[h]ope that you like stripes!" (Compl., S. Action, ¶ 40.)

E.   The Shapiro-Nordman Emails

On January 9, 2013, defendant Detective Brett Nordman ("Detective Nordman") of the Nassau County Police Department emailed Shapiro and stated, in relevant part:

> I had a question for Ms. Robinson about the letters that were sent to her place of employment and boss/bosses. I need to know if Ratner was ever contacted to stop those mailings and if so did he continue to 'communicate' with them afterwards? Reasoning behind this is there is a Stalking 4th degree statute that might fit for what he has done.

(Am. Compl., C. Action, Docket Entry 38, Ex. A.) Shapiro responded to Detective Nordman's email that same day and stated: "He was not so informed, but you can make an argument that sub 1 of that statute would fit (harm to the health if she reasonably thought

she could lose her job)[.]" (Am. Compl., C. Action, Ex. A.) (Parentheses in original.)

On January 10, 2013, Shapiro emailed Detective Nordman and wrote:

> AS PER OUR CONVERSATION TODAY,
>
> Plaintiff Ratner had his complaint served upon Mark Cairns, Head of Yellowbook Operations for the United States and United Kingdom, John Butler, Senior Vice President and General Counsel for Yellowbook, Jim McCusker, President of Yellowbook, with an office in King of Prussia, Pennsylvania, Tamara Carson Human Resources Regional Manager and Patty Sada, the head of human relations who is located in Ceda[r] Rapids, Iowa. This was a clear attempt to defame and libel Linda Robinson. There was no legitimate reason for Mr. Ratner to serve any of those people, and by doing so Plaintiff has harmed and impugned Defendant's ability to maintain and advance in her employment.
>
> I also believe you will be hearing from Linda that she is ready to make the proper ID not that she is not so scared[.]

(Am. Compl., C. Action, Ex. A.)

F.    The January 2013 Arrests

Cary Ratner and Seth Ratner were both arrested on January 15, 2013, in connection with criminal complaints filed by Robinson. (Am. Compl., C. Ratner Action, ¶¶ 26, 35; Compl., S. Ratner Action, ¶ 62.)

Cary Ratner was charged with stalking based on his alleged mailing of copies of the State Court Complaint to

Robinson's employer.  (Am. Compl., C. Action, ¶ 49, Ex. B.)  Cary alleges that Detective Nordman intentionally omitted an element of the stalking claim from Cary Ratner's criminal complaint. Specifically, Cary Ratner argues that "the [criminal complaint's] line stating that the individual has to be clearly informed to 'cease and desist' was omitted by Defendant Nordman." (Am. Compl., C. Action, ¶ 4, Ex. B.)

Seth Ratner was charged with menacing based on Robinson's claim that he ran her off the road on September 3, 2012. (Compl., S. Action, ¶¶ 28, 74; Ex. I.)

Plaintiffs both allege that Robinson manufactured her criminal allegations against them for the following reasons: (1) to garner more favorable settlement terms for her daughter in connection with her divorce proceeding, and (2) to "punish" Plaintiffs for seeking recourse against Robinson in the state courts.  (Am. Compl., C. Action, ¶ 3; Compl., S. Action, ¶ 3.) Shapiro, a former police officer and counsel to a police benevolent association, is alleged to have conspired with Detective Nordman to obtain the false arrests of Plaintiffs.  (Am. Compl., C. Action, ¶ 3; Compl., S. Action, ¶ 4.)

The criminal actions against Cary Ratner and Seth Ratner were both dismissed.  (Am. Compl., C. Action, ¶ 56; Compl., S. Action, ¶ 76.)

II.   Cary Ratner Action (13-CV-6278)

Cary Ratner commenced the instant action in federal court on November 13, 2013. (See Compl., C. Action, Docket Entry 1.) The Court presumes general familiarity with the factual background of this case, which is set forth in the Memorandum & Order dated September 16, 2014 granting in part and denying in part Robinson's and Shapiro's first motions to dismiss (the "Dismissal Order"). Ratner v. Robinson, No. 13-CV-6278, 2014 WL 4659308 (E.D.N.Y. Sept. 16, 2014). Particularly, the Dismissal Order dismissed Plaintiff's Section 1983 claims against Robinson and Shapiro without prejudice and with leave to replead.

Cary Ratner filed an Amended Complaint dated October 10, 2014 ("Amended Complaint"). (See Am. Compl., C. Action.) The major distinction between the Amended Complaint and the Complaint is that the Amended Complaint contains allegations regarding the Shapiro-Nordman Emails. (Am. Compl., C. Action, at ¶¶ 4-9, 62-64; see generally Complaint, C. Action.) The Amended Complaint also alleges that Shapiro "induced, conspired, aided and abetted [Nordman] as to how to get around the requirements to charge someone under NY State Penal Law, Stalking in the 4th Degree." (Am. Compl., C. Action, ¶ 4.) Robinson is alleged to be a "state actor by proxy" because Shapiro was acting as her agent and attorney when actively working with the police to create,

manufacture, and maintain the charges against Cary Ratner.  (Am.
Compl., C. Action, ¶ 7.)

III.  <u>Seth Ratner Action 14-CV-7337</u>

Seth Ratner commenced his action on December 17, 2014.
(<u>See</u> Compl., S. Action, Docket Entry 1.)  His Complaint asserts
claims against Robinson, Shapiro and the County Defendants
pursuant to Section 1983, as well as state law claims for
negligence, false arrest, malicious prosecution, and fraud, with
respect to his January 2013 arrest.

Seth Ratner alleges that Shapiro "induced, conspired,
aided and abetted Detective Brett Nordman as to how to get the
Plaintiff arrested," and cites to the Shapiro-Nordman Emails to
support the notion "that there was a relationship between Defendant
Shapiro, and Defendant Nordman."  (Compl., S. Action, ¶ 4.)  The
Complaint further alleges that Robinson filed at least four
different, inconsistent police reports respecting the September 3,
2012 incident and that while Robinson claimed to have video footage
to support her claims, "it was discovered that there were no[ ]
[video tapes]."  (Compl., S. Action, ¶¶ 29-30.)

IV.  <u>Pending Motions</u>

A.  <u>Motions to Dismiss</u>

Robinson and Shapiro (collectively, the "Moving
Defendants") filed motions to dismiss, arguing that the pleadings
in both actions fail to sufficiently plead that they were "state

13

actors" pursuant to Section 1983. (Robinson's Br., C. Action Docket Entry 42-1, at 5-7; Shapiro's Br., C. Action, Docket Entry 46-6, at 6-7; Robinson's Br., S. Action, Docket Entry 37-1, at 5-8; Shapiro's Br., S. Action, Docket Entry 39-3, at 4-5.) The Moving Defendants similarly allege that the Amended Complaint fails to state claims for negligence, false arrest, malicious prosecution, and fraud under New York state law. (Robinson's Br., C. Action, at 7-10; Shapiro's Br., C. Action, at 7-9; Robinson's Br., S. Action, at 9-12; Shapiro's Br., S. Action, at 5-8.)

Cary Ratner and Seth Ratner have opposed the motions to dismiss pending in their respective actions.

B.  <u>Motions for Sanctions</u>

The Moving Defendants each filed motions requesting that they be awarded sanctions and that the Ratners be enjoined from commencing any future legal action without leave of court. (C. Action, Docket Entries 56 and 58; S. Action, Docket Entries 47 and 49.) The Moving Defendants allege that the state court's determination in the State Court Action demonstrates "[t]he complete lack of any factual basis" and bad faith inherent in the Ratners' commencement of these federal actions. (Shapiro's Sanctions Br., C. Action, Docket Entry 58-8, at 1; Robinson's Sanctions Br., Docket Entry 56-1, at 1.) Shapiro avers that the State Court Action confirms "the Ratner's personal animosity

towards Linda Robinson and pattern of commencing litigation in bad faith . . . ." (Shapiro's Sanctions Br. at 1-2.)

The Moving Defendants make note of the timing of the commencement of the Cary Ratner Action and the Seth Ratner Action. (Robinson's Sanctions Br. at 5; Shapiro's Sanctions Br. at 1-2.) Robinson alleges that Cary Ratner commenced his lawsuit one month after sanctions were imposed against him in the State Court Action, and that Seth Ratner commenced his lawsuit one month after Robinson filed her first motion to dismiss Cary Ratner's Complaint. (Robinson's Sanctions Br. at 5.)

Robinson also urges the Court to consider Cary Ratner's prior litigation in federal and state court, specifically: (a) Ratner v. Martel, No. 07-CV-4742, a patent infringement action that was transferred to New Hampshire and ultimately settled; (b) Ratner v. Edison Control Corp., No. 92-CV-3929, a patent infringement action that was dismissed with prejudice; and (c) Ratner v. F.A.A., No. 09-CV-0892, an action for review of an FAA penalty for violating hazardous materials regulations where Ratner's petition for review was denied (Robinson's Sanctions Br. at 8-9.) See Ratner v. F.A.A., 368 F. App'x 174 (2d Cir. 2010). Similarly, Seth Ratner is alleged to have sued a former business associate in three different courts with respect to the alleged breach of a sales marketing agreement. (Robinson's Sanctions Br. at 10.) Cary Ratner and Seth Ratner are both alleged to have

15

frustrated discovery in Seth Ratner's matrimonial proceeding with Cary Ratner being sanctioned by the matrimonial judge. (Robinson's Sanctions Br. at 2-3.)

The Ratners do not deny Cary Ratner's involvement in prior federal court litigation, but aver that the Court should not consider these older proceedings. The Ratners also argue that the Court should not consider the determination of the State Court Action in light of Cary Ratner's preclusion and his symptoms of post-traumatic stress disorder during the course of those proceedings. (C. Ratner's Sanctions Br. #1, Docket Entry 60, 3-4; C. Ratner's Sanctions Br. #2, Docket Entry 61, ¶¶ 4-7.)[4]

Shapiro alleges that he mailed "Safe Harbor" notices to the Ratners in June 2015. (Shapiro's Sanctions Br., at 4.) Robinson alleges that she requested Seth Ratner withdraw his lawsuit in a footnote set forth in her Rule 12 motion to dismiss. (Robinson's Sanctions Br. at 11.)

DISCUSSION

I.  Consolidation of the Actions

The Court has reviewed the dockets in the C. Action and S. Action, and the Complaints involve the same Defendants and all claims arise out of the same general set of facts. Indeed, Seth

---

[4] Plaintiffs filed joint opposition to the pending sanctions motions which they filed under both docket numbers. For ease of reference, the Court will cite to the submissions filed in the C. Action.

Ratner expressly alleges that he and his father were arrested in connection with the "same conspiracy." (Compl., S. Action, ¶ 4.) Thus, the Court finds that consolidation is warranted to avoid the duplicative and unnecessary use of judicial resources. See FED. R. CIV. P. 42(a). See also Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990) ("The trial court has broad discretion to determine whether consolidation is appropriate . . . [and] courts have taken the view that considerations of judicial economy favor consolidation.") As such, the Court sua sponte Orders that Ratner v. Robinson, et. al., No. 13-CV-6278, and Ratner v. Robinson, et. al., No. 14-CV-7337, be CONSOLIDATED.

II. The Motions to Dismiss

    A. Standard of Review

        To withstand a motion to dismiss, a complaint must contain factual allegations that are sufficient to state a facially "plausible" claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations and citations omitted). To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 679. The Court's plausibility determination is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted).

A complaint filed by a pro se litigant is to be "'liberally construed'" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976)). See also Harris, 572 F.3d at 72.

B. Documents Considered

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint itself." Dechberry v. N.Y. City Fire Dep't, No. 14-CV-2130, 2015 WL 4878460, at *1 (E.D.N.Y. Aug. 14, 2015). However, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.) See also FED. R. CIV. P. Rule 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") If the Court considers matters outside of the complaint in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56 . . .

[and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Cary Ratner, Seth Ratner, and Robinson each include allegations regarding the State Court Action in their submissions with respect to the pending motions to dismiss. (See, e.g., Robinson's Br., C. Action, at 2; C. Ratner's Br. #2, C. Action, Docket Entry 51, at 3; S. Ratner's Br. #2, S. Action, Docket Entry 43, at 2; Robinson's Reply Br., C. Action, Docket Entry 54, at 3.) Robinson has annexed the State Court Action Summons and Complaint and Court Orders in that matter to her motion to dismiss the Cary Ratner Action. (Robinson's Br., C. Action, Exs. 1-3.) The State Court Action is not referenced in Seth Ratner's Complaint and is only generally referenced in Cary Ratner's Amended Complaint. (See generally Compl., S. Action; Am. Compl., C. Action, ¶¶ 49, 62.) Cary Ratner's submission also contains allegations respecting Family Court proceedings and incidents that occurred in connection with Seth Ratner's matrimonial action that are not referenced in his Amended Complaint. (C. Ratner's Br. #2, C. Action, at 2-3; see generally C. Ratner Am. Compl.)

The Court declines to consider matters outside the pleadings and will not convert the pending motions to dismiss into motions for summary judgment. Although the State Court Action is generally referenced in Cary Ratner's Amended Complaint, the

parties' allegations regarding the progression of that action and the Orders issued in that action are squarely outside of the pleadings. Similarly, the Amended Complaint does not contain allegations regarding incidents that occurred in connection with Family Court and matrimonial proceedings. (See generally Am. Compl., C. Action.) The Court finds that the State Court Action Orders and pleadings are not incorporated by reference, and that neither the documents nor the previously noted allegations are "integral" to the Complaint or Amended Complaint. See Int'l Audiotext Network, Inc. v. Amer. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (noting that when plaintiff "'chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendants' motion to dismiss, without converting the proceeding to one for summary judgment." (alteration in original)) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992)).

C. Cary Ratner Amended Complaint

    i. Section 1983 Claims

Robinson and Shapiro argue that the Amended Complaint fails to cure the deficiency in Cary Ratner's original complaint with respect to his Section 1983 claims. (See, e.g., Shapiro's

Br., C. Action, at 6; Robinson's Br., C. Action, at 5-6.)
Specifically, Robinson and Shapiro aver that Cary Ratner has not
alleged that they are state actors.  The Court agrees.

Section 1983 provides that:

> [e]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes
> to be subjected, any citizen of the United
> States . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff
must "'allege that (1) the challenged conduct was attributable at
least in part to a person who was acting under color of state law
and (2) the conduct deprived the plaintiff of a right guaranteed
under the Constitution of the United States.'"  Rae v. Cnty. of
Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider
v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

"Private parties are not proper defendants in a Section
1983 action unless the private parties were acting under color of
state law."  Lee v. Law Office of Kim & Bae, P.C., 530 F. App'x
9, 9 (2d Cir. 2013) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan,
526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)).  A
civilian who files a police report, whether it is truthful or not,
"is not acting under color of state law, and cannot be held liable
for any subsequent alleged constitutional violations by the

police." Armatas v. Maroulleti, No. 08-CV-0310, 2010 WL 4340437, at *17 (E.D.N.Y. Oct. 19, 2010).

"[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." Id. (alteration in original) (quoting Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002)). However, "'conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.'" Lee, 530 F. App'x at 9. Rather, to state a claim against a private party on a Section 1983 conspiracy theory, a plaintiff must plead "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Id. at 9-10 (quoting Ciambriello, 292 F.3d at 324-25). "'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Id. at 10 (quoting Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)).

The Amended Complaint amplifies Cary Ratner's initial allegations of the purported conspiracy between Shapiro, Robinson, and the County Defendants by annexing the Shapiro-Nordman Emails as an exhibit. (See generally Am. Compl., C. Action, Ex. A.) While Cary Ratner alleges that these emails "clearly show Defendant Shapiro, advising Defendant Nordman, how to get around the

22

requirements of Stalking in the 4th Degree," the Court does not join in this interpretation. (C. Ratner's Br. #2, at 4.) The Shapiro-Nordman Emails establish that Detective Nordman inquired as to whether Cary Ratner was asked to stop mailing letters to Robinson's employer; Shapiro responded that Cary Ratner was not contacted and asserted a legal argument he apparently believed to be viable pursuant to the stalking statute; and Shapiro detailed the individuals that Cary Ratner "had his complaint served upon" and stated that Detective Nordman would be "hearing from Linda that she is ready to make the proper ID not that she is not so scared." (Am. Compl., C. Action, Ex. A.) Even a liberal reading of the Amended Complaint cannot transform the Shapiro-Nordman Emails into an agreement between Detective Nordman and Shapiro (and Robinson by proxy) to inflict an unconstitutional injury upon Cary Ratner. See Lee, 530 F. App'x at 9.

The balance of Cary Ratner's allegations of a conspiracy consist of vague, general allegations that Robinson and Shapiro "acted in concert with and as state actors in that they took an active role in creating, manufacturing, and maintaining the charges against Plaintiff by working with and advising the police . . . ." (Am. Compl., C. Action, ¶ 7.) Accordingly, Robinson's and Shapiro's motions for judgment on the pleadings insofar as they seek dismissal of Cary Ratner's Section 1983 claims are GRANTED.

ii. Negligence

It is well settled that a claim for "negligent investigation and prosecution" is not recognized in New York. Mitchell v. Cnty. of Nassau, No. 05-CV-4957, 2007 WL 1580068, at *13 (E.D.N.Y. May 24, 2007). Accord Coleman v. Corp. Loss Prevention Assocs., Inc., 282 A.D.2d 703, 724, N.Y.S.2d 321, 322 (2d Dep't 2001). See also Jenkins v. City of N.Y., 91-CV-3639, 1992 WL 147647, at *8 (S.D.N.Y. June 15, 1992) (dismissing claims for negligence where the allegations arose from the same set of facts as plaintiffs' claims for false arrest and malicious prosecution and "[t]hey simply allege that [plaintiff] would not have been arrested or prosecuted if defendants had been more careful.").

It is unclear from the Amended Complaint whether Cary Ratner's negligence claim is only interposed against the County Defendants in light of his allegation that "Defendant County, Police Department, Officers, Detective Nordman, acted negligently in that they had a duty to act reasonably and not act in a manner that would cause injury or harm to the Plaintiff." (Am. Compl., C. Action, ¶ 102.) However, applying a liberal construction to the Amended Complaint, it appears that Cary Ratner claims that Robinson and Shapiro acted negligently to the extent that they failed to properly investigate the criminal charges Robinson filed against him. (See Am. Compl., C. Action, ¶ 105) ("[e]ach of the

defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not to falsely arrest, falsely imprison maliciously or otherwise prosecute [Cary Ratner] . . . .") Based on the absence of a claim for "negligent investigation and prosecution" under New York law, Robinson's and Shapiro's motions for judgment on the pleadings insofar as they seek dismissal of Cary Ratner's negligence claim are GRANTED. It is not necessary for the Court to address the issue of whether Robinson or Shapiro owed a "duty" to Cary Ratner. (See Shapiro's Br., C. Action, at 7-8.)

### iii. False Arrest

A plaintiff will establish a false arrest claim pursuant to New York law by demonstrating: "'(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" TADCO Const. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 268 (E.D.N.Y. 2010) (quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).) Accord Petrychenko v. Solovey, 99 A.D.3d 777, 952 N.Y.S.2d 575 (2d Dep't 2012).

A civilian that merely provides information to the authorities will not be liable for false arrest unless the defendant "'played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to

act.'" <u>Mesiti v. Wegman</u>, 307 A.D.2d 339, 340, 763 N.Y.S.2d 67, 69
(2d Dep't 2003) (quoting <u>Du Chateau v. Metro-North Commuter R.R.
Co.</u>, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (1st Dep't 2003)).
<u>Accord</u> <u>Amatas v. Maroulleti</u>, No. 08-CV-0310, 2010 WL 4340437, at
*20 (E.D.N.Y. Oct. 19, 2010). Indeed, "'[t]he defendant must have
affirmatively induced the officer to act, such as taking an active
part in the arrest and procuring it to be made or showing active,
officious and undue zeal, to the point where the officer is not
acting his own volition.'" <u>Mesiti</u>, 307 A.D. 2d at 340, 763
N.Y.S.2d at 69 (quoting 59 N.Y. Jur.2d False Imprisonment and
Malicious Prosecution § 37). <u>See</u> <u>also</u> <u>TADCO Const. Corp.</u>, 700 F.
Supp. 2d at 269 (noting, in the context of a Section 1983 false
arrest claim, that a civilian takes an "active role" in an arrest
where he provides "false information leading to an arrest where
the defendants lacked reasonable cause for their belief in the
plaintiff's culpability.") (internal quotation marks and citations
omitted).

        A claim for false arrest is defeated by the existence of
probable cause. <u>TADCO Const. Corp.</u>, 700 F. Supp. 2d at 275. To
overcome the presumption of probable cause in a case where the
defendant is a civilian complainant, the plaintiff "must plead
facts to show that the complainant 'gave false information or
withheld information' from the arresting officer." <u>Id.</u> (quoting
<u>Du Chateau</u>, 253 A.D.2d at 132, 688 N.Y.S.2d at 15). Even if the

                                26

civilian ultimately errs in his belief that a person is committing a crime, "he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a malicious prosecution or false arrest claim." Id.

The Amended Complaint fails to overcome the presumption that Robinson had probable cause for her criminal complaint against Cary Ratner. A careful reading of the Amended Complaint and Cary Ratner's submissions in opposition to the pending motions reveal that he does not expressly deny that he mailed copies of the State Court Action Summons and Complaint to Robinson's employer. Cary Ratner alleges that "[t]he Criminal Court found that serving a Summons and Complaint by mail is not illegal and is allowed under NY State CPLR 312b . . . the District Attorney's Office knew that the false allegation was, if true, perfectly legal under CPLR 312b." (Am. Compl., C. Action, ¶¶ 56-57.) See also C. Ratner Br. #2 at 304 ("[w]ere this mailing to be true, and if the Plaintiff Ratner did it, this is not illegal, but no evidence to support this claim has ever been presented.")

Furthermore, the Amended Complaint fails to set forth any facts sufficient to overcome the presumption of probable cause with respect to Shapiro. (See generally Am. Compl., C. Action) Cary Ratner does not plead any facts that would indicate Shapiro's belief in his client's allegations against Cary Ratner were unreasonable.

Accordingly, Robinson's and Shapiro's motions for judgment on the pleadings insofar as they seek dismissal of Cary Ratner's false arrest claim are GRANTED.

### iv. Malicious Prosecution

The elements of a malicious prosecution claim under New York law are: "'(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 734 N.E.2d 750, 752, 712 N.Y.S.2d 438, 440 (2000) quoting Broughton v. State of New York, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 94 (1975) cert. denied sub. nom., Schanbarger v. Kellogg, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975). See also Coyle v. Coyle, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005). Merely reporting a crime to the authorities and providing testimony does not suffice to state a claim for malicious prosecution; "'it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" DeFilippo v. Cnty. of Nassau, 183 A.D.2d 695, 696, 583 N.Y.S.2d 283, 284 (2d Dep't 1992) (quoting Viza v. Town of Greece, 94 A.D.2d 965, 965, 463 N.Y.S.2d 971 (4th Dep't 1983)). However, "[w]here a party is responsible for providing false information or manufactured evidence that

28

influences a decision whether to prosecute, he may be held liable for malicious prosecution." Chimurenga v. City of N.Y. City Transit Auth., 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999).

"[T]he existence of probable cause constitutes a complete defense to a claim of malicious prosecution [in New York]." Morant v. City of N.Y., 95 A.D.3d 612, 613, 944 N.Y.S.2d 115, 115 (1st Dep't 2012). Accord Del Col v. Rice, No. 11-CV-5138, 2012 WL 6589839, at *14 (E.D.N.Y. Dec. 18, 2012). Additionally, malice may be established by demonstrating that the subject prosecution was "'undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" Del Col, 2012 WL 6589839, at *14 (quoting Manganiello v. City of N.Y., 612 F.3d 149, 153 (2d Cir. 2010)).

While the Court is mindful of the delay between the subject incidents and Robinson's filing of her criminal complaint,[5] as set forth more fully in the Court's discussion of Cary Ratner's false arrest claim, the Amended Complaint fails to overcome the presumption that Robinson and Shapiro possessed probable cause with respect to Robinson's criminal complaint.

Parenthetically, while Cary Ratner makes great hay of the purported deletion of the phrase "the actor was previously

---

[5] Robinson's supporting deposition dated January 15, 2013 states that she was contacted by an executive assistant in her employer's legal department "10 times starting on May 9, 2012 through July 12, 2012." (Am. Compl., C. Action, Ex. B.)

clearly informed to cease that conduct" from the elements of the stalking claim set forth in the criminal complaint, the document in question was not alleged to have been prepared by Robinson or Shapiro. (C. Ratner's Br. #1, Docket Entry 50, at 3-44; Am. Compl., C. Action, at Ex. B.) Moreover, the criminal complaint charges Cary Ratner pursuant to N.Y. Penal Law § 120.45(1); that subsection does not include language regarding the actor being informed to cease their conduct. (Am. Compl., C. Action, Ex. B.) See N.Y. Penal Law § 120.45(1). Thus, Cary Ratner has not met his "heavy burden" of stating a claim for malicious prosecution. See Smith-Hunter, 95 N.Y.2d at 195 (noting that "[w]hile the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and accusers must be allowed room for benign misjudgments.")

Accordingly, Robinson's and Shapiro's requests for judgment on the pleadings with respect to Cary Ratner's claim for malicious prosecution are GRANTED.

v.    Fraud

The elements of a fraud claim under New York law are: "(1) a misrepresentation or omission of material fact; (2) made deliberately or knowingly (with scienter); (3) with the intent to defraud; (4) reasonable reliance on the representation; and (5) pecuniary damages or loss." M&T Mortgage Corp. v. White, 736 F.

30

Supp. 2d 538, 560-61 (E.D.N.Y. 2010) (emphasis in original). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P 9(b).

In order to maintain a fraud claim, plaintiff must establish "that its reliance on an alleged misrepresentation was justifiable or reasonable." Waterscape Resort LLC v. McGovern, 107 A.D.3d 571, 572, 967 N.Y.S.2d 368, 369 (1st Dep't 2013). Plaintiff will not demonstrate the reliance element of fraud "by showing only that a third party relied on a defendant's false statements." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998). See also Ahluwalia v. St. George's Univ., LLC, 63 F. Supp. 3d 251, 270 (E.D.N.Y. 2014) (noting the inconsistency among New York courts with respect to fraud claims premised on third party reliance and applying Lollo to dismiss plaintiff's fraud claim where he only alleged that the medical school and its employees, not the plaintiff, relied on the subject representations).

Cary Ratner alleges that Robinson "fraudulently made representations of fact about what occurred on January 15, 2013 when she filed a police report on what took place eight months previously," and that she made these representations "with the aid

and assistance of [Shapiro]."  (Am. Compl., C. Action, ¶ 114.)[6]
However, Cary Ratner does not allege that he relied on Robinson's
statements to his detriment.  The Amended Complaint essentially
alleges that a third party, namely, Detective Nordman and/or the
County Defendants, relied on Robinson's representations.  Thus,
Cary Ratner has failed to sufficiently plead a claim for fraud as
his allegations are solely founded in third-party reliance.  See
Ahluwalia, 63 F. Supp. 3d at 270.

    While New York recognizes a claim for conspiracy to
commit fraud, "'civil conspiracy to commit fraud, standing alone,
is not actionable . . . if the underlying independent tort has not
been adequately pleaded.'"  Ainbinder v. Money Ctr. Fin. Group,
Inc., 10-CV-5270, 2014 WL 294162, at *9 (E.D.N.Y. Jan. 23, 2014)
(ellipsis in original) (quoting Vasile v. Dean Witter Reynolds
Inc., 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), aff'd, 205 F.3d
1327 (2d Cir. 2000)). Similarly, one of the elements required to
establish liability for aiding and abetting fraud is the
demonstration of "the existence of a fraud." Lerner v. Fleet Bank,
N.A., 459 F.3d 273, 292 (2d Cir. 2006) (internal quotation marks
omitted).  See also IKB Intern. S.A. v. Bank of America Corp., 584
F. App'x 26, 29 (2d Cir. 2014) (holding that plaintiff's claim for

---

[6] On page 25 of C. Ratner's Amended Complaint, Plaintiff
misnumbers his paragraphs 114, 115, 109, etc.  This paragraph
number is at page 26-27.

aiding and abetting fraud "fails in the absence of underlying fraud"). Although Cary Ratner alleges that the Amended Complaint should also be construed to assert claims for aiding and abetting fraud and conspiracy to commit fraud, these claims cannot be stated in the absence of a viable underlying claim for fraud. (See C. Ratner's Br. #1, Docket Entry 50, at 8-11.)

Accordingly, Robinson's and Shapiro's requests for judgment on the pleadings with respect to Cary Ratner's claim for fraud are GRANTED.

D. Seth Ratner Complaint

i. Section 1983 Claims

Robinson and Shapiro argue that Seth Ratner has failed to establish that they are state actors with respect to his Section 1983 claims. The Court agrees.

Seth Ratner alleges that "the exhibits clearly show that the Plaintiff did plead that Shapiro [ ] a former NYPD Detective, and lawyer for the PBA, did act as a state actor who went far and beyond to act in concert with Nordman to inflict unconstitutional injury, with the goal of causing damage." (S. Ratner's Br. #1, Docket Entry 42 at 2.) However, the Complaint's sole support for the purported conspiracy between Shapiro and Nordman are the Shapiro-Nordman Emails, which Seth Ratner alleges "clearly shows that there was a relationship between Defendant Shapiro, and Defendant Nordman, in an incident concerning the Plaintiff's

father, Cary Ratner, who was arrested and tortured at the same time as part of the same conspiracy." (Compl., S. Action, ¶ 4.)

The Court finds that Seth Ratner has not stated a plausible claim that Robinson and Shapiro were "willful participant[s] in joint activity with the State or its agents." Lee, 530 F. App'x at 9 (internal quotation marks and citation omitted). The notion that emails sent with respect to Robinson's criminal complaint against Cary Ratner somehow translate into a conspiracy to arrest Seth Ratner is not persuasive. Parenthetically, as set forth above, the Shapiro-Nordman Emails failed to establish a conspiracy with respect to Cary Ratner's arrest. Additionally, Seth Ratner's allegation that the Shapiro-Nordman Emails establish that there was a "working relationship" between those Defendants prior to January 9, 2013 is wholly unsupported. (Compl., S. Action, ¶¶ 47-48.)

Accordingly, Robinson's and Shapiro's motions for judgment on the pleadings with respect to Seth Ratner's Section 1983 claims are GRANTED.

        ii. Negligence

Applying a liberal construction to the Complaint, it appears that Seth Ratner claims that Robinson and Shapiro acted negligently to the extent that they failed to properly investigate the criminal charges Robinson filed against him. (See Compl., S. Action, ¶¶ 128-31.) Based on the absence of a claim for "negligent

investigation and prosecution" under New York law, see Mitchell, 2007 WL 1580068, at *13, Robinson's and Shapiro's motions for judgment on the pleadings insofar as they seek dismissal of Seth Ratner's negligence claim are GRANTED. It is not necessary for the Court to address the issue of whether Robinson or Shapiro owed a "duty" to Seth Ratner. (See Shapiro's Br., S. Action, Docket Entry 39-3, at 5.)

### iii. False Arrest

CPLR Section 215 proscribes a one-year statute of limitations for false arrest with the claim accruing upon the party's release from prison. N.Y. CPLR § 215(3); Pinaud v. Cnty. of Suffolk, 798 F. Supp. 913, 923 (E.D.N.Y. 1992). Seth Ratner has not alleged that he was detained beyond January 16, 2013. (See, e.g., Compl., S. Action, ¶¶ 71-72) ("Sometime in the early morning of January 16, 2013, [Seth Ratner] and his father were transferred to Police Headquarters for photo and fingerprinting.") Seth Ratner's false arrest claim accrued on January 16, 2013 and the one-year statute of limitations had run when he commenced his action on December 17, 2014. Accordingly, Robinson's and Shapiro's motions for judgment on the pleadings with respect to Seth Ratner's cause of action for false arrest are GRANTED.

### iv. Malicious Prosecution

Though thin, given Seth Ratner's pro se status, the Court declines to dismiss his claims against Robinson for malicious

prosecution.  The Complaint alleges that Robinson filed multiple inconsistent "police reports" respecting the incident where she claims Seth Ratner swerved his car toward her.  (Compl., S. Action, ¶¶ 28-29.)  Two such supporting depositions are annexed to the Complaint.  (Compl., S. Action, Ex. I, L.)[7]  In her supporting deposition dated September 3, 2012 (the night of the alleged incident), Robinson states that:

> As I approached my home, I observed a vehicle
> cross the double yellow line into my lane and
> drove directly at my vehicle and
> [indiscernible].  I swerved to avoid a
> collision.  As the vehicle passed I observed
> that it was a gray range rover.  My son in law
> drives the same type of vehicle which I
> observed.  This incident placed me in great
> fear and I want the responsible party
> arrested. . . .

(Compl., S. Action, Ex. L.)  However, in a supporting deposition dated January 14, 2013, Robinson states, in relevant part:

> I recognized the silver Land Rover as that of
> my son in law, Seth Ratner.  Seth was driving
> that car.  I saw him behind the wheel driving.
> Seth drives that car and I recognized it.
> After he ran me off the road I pulled into my
> neighbors driveway and backed out to chase
> him.  I was able to follow him close enough to
> read his license plate number DXE-6293.  If I
> hadn't swerved into my neighbors driveway I
> would have eithe[r] hit him on the curb and
> lawn . . . ."

---

[7] The Court notes that these exhibits do not appear to contain the entirety of Robinson's supporting depositions.  However, the Court is bound to consider any "written instrument[s] attached" to the Complaint.  See Sira v. Morton, 380 F.3d at 67 (2d Cir. 2004).

(Comp., S. Action, Ex. I.)  The Court notes that Seth Ratner does not expressly deny that he was the driver of the silver Land Rover that allegedly swerved into Robinson and the Complaint merely characterizes Robinson's allegations as "false".  (See, e.g., Compl., S. Action, ¶ 58.)  Nevertheless, the inconsistency in Robinson's sworn statements regarding the car swerving incident and Seth Ratner's denial of Robinson's claim that he threw trash on her lawn suffice to plead that Robinson provided false information to the police.  (See Compl., S. Action, ¶¶ 35-36, Ex. I, L.)  See Chimurenga, 45 F. Supp. 2d at 343 (a party may be held liable for malicious prosecution where she provides false information that influences a decision to prosecute).

With respect to actual malice, the Complaint details the acrimony between the Robinson and Ratner families.  The Complaint alleges that Robinson and Seth Ratner were involved in Family Court proceedings with Seth Ratner being granted a temporary order of protection.  (Compl., S. Action, ¶ 6.)  Seth Ratner further alleges that at one Family Court appearance, "three court officers surrounded [him], dragged him into a room, and he was thrown against a wall, and searched twice, while Defendant's Shapiro and Robinson screamed that he had [a cell phone used to take a photo of Robinson] and they wanted him arrested."  (Compl., S. Action, ¶ 7.)  The hostility between the parties appears to be undisputed and the Complaint's allegation that Robinson's criminal complaint

"was made in an attempt to force better settlement terms for Defendant Robinson's Daughter and to deflect the charges in Family Court for defending himself against false accusations by Linda Robinson," is certainly plausible. (Compl., S. Action, ¶ 3.)

Thus, Robinson's motion for judgment on the pleadings with respect to Seth Ratner's cause of action for malicious prosecution is DENIED.

Conversely, the Complaint fails to sufficiently plead that Shapiro played an "active role" in Seth Ratner's criminal prosecution. The Complaint generally alleges that Shapiro "used his contacts and influence" as a former police officer and alleged counsel to a police fraternal organization to effectuate Seth Ratner's arrest in order to "persecute the Plaintiff as a result of the divorce action between Plaintiff and the daughter of Defendant Robinson." (Compl., S. Action, ¶ 3.) Seth Ratner's additional claims of Shapiro's purported "influence" are equally threadbare. (See Compl., S. Action, ¶ 83, "[a]t the last court appearance, Shapiro appeared, seeking to influence further, the District Attorney, had a prolonged conversation in the court hall. Shapiro had no status as he neither represented, Defendant Robinson, or was a party to the action. He had no other cases on in that Court that day.") These conclusory allegations do not suffice to establish that Shapiro took an "active" role in Seth Ratner's arrest. See, e.g., DeFilippo, 183 A.D.2d at 696 (the

defendant plays an active role in the criminal prosecution where he "giv[es] advice and encouragement or importun[es] the authorities to act."). Indeed, the only correspondence (emails) between Shapiro and the authorities that are referenced in the Complaint pertain to Robinson's criminal complaint against Cary Ratner. (See Compl., S. Action, ¶ 4, Ex. A.) Accordingly, Shapiro's motion for judgment on the pleadings with respect to Seth Ratner's cause of action for malicious prosecution is GRANTED.

v.  Fraud

The Complaint essentially alleges that a third-party, Detective Nordman and/or the County Defendants, relied on Robinson's allegedly false criminal complaint. (See Compl., S. Action, ¶¶ 114-15.)[8] Thus, the Complaint suffers from the same defect as Cary Ratner's Amended Complaint; namely, that Seth Ratner has failed to plead that he relied on Robinson's allegedly false representations to his detriment. See Ahluwalia, 63 F. Supp. 3d at 270. Accordingly, Robinson's and Shapiro's motions for judgment on the pleadings with respect to Seth Ratner's cause of action for fraud are GRANTED.

E.  Amendment

---

[8] On page 35 of S. Ratner's Complaint, Plaintiff misnumbers his paragraphs 141, 110, etc. This paragraph number is at page 36-37.

While Plaintiffs have not specifically sought to amend their pleadings, the Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

Cary Ratner has already been given an opportunity to replead his Section 1983 claims and the Court finds that a second opportunity to replead those claims would be futile. Although Robinson's and Shapiro's first motions to dismiss did not address Cary Ratner's state law claims, Cary Ratner has already filed an Amended Complaint and the Court similarly finds that leave to replead his state law claims would be futile. (See Dismissal Order.) Accordingly, Cary Ratner's claims against Robinson and Shapiro are DISMISSED WITH PREJUDICE.

Here, the Court finds that leave to replead Seth Ratner's Section 1983 claims and state law claims for negligence, false arrest, and fraud against Robinson and Shapiro, would be futile. The Complaint's sole support for Robinson's and Shapiro's

purported status as state actors is an email exchange respecting Cary Ratner, not Seth Ratner. Moreover, this Court has now twice rejected Cary Ratner's argument that Robinson and Shapiro are state actors pursuant to Section 1983. Additionally, Seth Ratner's false arrest claim is barred by the statute of limitations, and his claims for negligence and fraud are founded in legal theories that are not recognized in New York. Accordingly, these claims are DISMISSED WITH PREJUDICE.

However, the Court finds that Seth Ratner should be given one opportunity to cure the deficiencies of his malicious prosecution claim against Shapiro as identified in this Memorandum and Order. Accordingly, Seth Ratner's claim for malicious prosecution against Shapiro is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO REPLEAD.

F. <u>Supplemental Jurisdiction</u>

Robinson and Shapiro argue that the state law claims against them should be dismissed if Plaintiffs' federal claims against them fail. (Robinson's Br., C. Action, at 10; Shapiro's Br., C. Action, at 10-12; Robinson's Br., S. Action, at 13; Shapiro's Br., S. Action, at 9-10.) The Court disagrees.

Even without Plaintiffs' federal claims against Robinson and Shapiro, the Court may exercise supplemental jurisdiction over the state law claims because the Court has not dismissed the federal claims against the County Defendants. "Under 28 U.S.C.

§ 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'" _Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc._, 373 F.3d 296, 308 (2d Cir. 2004). Contrary to Robinson's and Shapiro's contention, "[t]his is so even if the state law claim is asserted against a party different from the one named in the federal claim." _Id._ (citations omitted).

A state law claim forms part of the same case or controversy as a federal claim if the claims "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." _People by Abrams v. Terry_, 45 F.3d 17, 23 n.7 (2d Cir. 1995) (quoting _United Mine Workers of Am. v. Gibbs_, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)). Here, Plaintiffs' state law claims against Robinson and Shapiro and the federal claims against the County Defendants unquestionably derive from a common nucleus of operative fact. Accordingly, Robinson's and Shapiro's motions to dismiss insofar as they seek dismissal of the state law claims on jurisdictional grounds are DENIED

III. Defendants' Motions for Sanctions

This Circuit has construed Rule 11 to provide for the imposition of sanctions "when a party has signed a pleading for

42

'an improper purpose such as to delay or needlessly increase the cost of litigation,' or . . . when a party presents to the court papers 'without a belief formed, from a reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.'" Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 139 (S.D.N.Y. 2002) (quoting Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp., Inc., 28 F.3d 259, 264 (2d Cir. 1994)). The Court is permitted to impose sanctions where a pro se litigant violates Rule 11. Vasile, 20 F. Supp. 2d at 505.

Factors to be considered in determining whether sanctions are warranted include: "(1) [w]hether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case." Vasile, 20 F. Supp. 2d at 506 (brackets in original).

The significant level of personal animosity between the Ratners and Robinson and Shapiro appears to be beyond dispute. Nevertheless, the Court declines to sanction the Ratners for filing their lawsuits or refusing to discontinue them. The State Court Action pertained to different incidents and different claims than those set forth in the above-captioned actions and (with the exception of Seth Ratner's matrimonial action) Cary and Seth Ratner's prior litigation bears no relation to the case at bar.

While Robinson and Shapiro seek to analogize this case to Vasile, that case involved fourteen pending motions in a lawsuit commenced by a "notorious pro se 'frequent filer[ ]'" who made forty-seven different submissions to the Court in a six-month period and refused to forbear in his incessant motion practice despite being previously warned and directed to submit all documents directly to the Court for approval. Vasile, 20 F. Supp. 2d at 503-04. Cary Ratner's unsuccessful prosecution of the State Court Action does not create "frequent filer" status for him or his son. Moreover, although the State Court Action also involved claims arising out of the hostile encounters between Cary Ratner and Robinson, that action addressed different incidents and different claims than those currently before this Court. The state court's determination that Cary Ratner defamed Robinson by mailing copies of the State Court complaint to her employer does not automatically translate to a "pattern of commencing litigation in

44

bad faith" as suggested by Shapiro.  (Shapiro's Sanctions Br., at 2.)

While the Court is mindful that the lion's share of the Ratners' claims against Robinson and Shapiro have been dismissed and the timing of the commencement of these actions is certainly suspect, the Court is equally mindful of the Ratners' <u>pro</u> <u>se</u> status and lack of formal legal training.  Accordingly, Robinson's and Shapiro's requests for the imposition of sanctions against Cary Ratner and Seth Ratner are DENIED.

A litigant may be restricted from future access to the courts where he "engages in a pattern of vexatious litigation." <u>Lipin</u>, 202 F. Supp. 2d at 142.  In determining whether to impose such restriction, the following factors should be considered: "'(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation . . . (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.'"  <u>Id.</u> (quoting <u>Safir</u>, 792 F.2d at 24.) However, "pro se status weighs against an injunction." <u>Davey v. Dolan</u>, 453 F. Supp. 2d 749, 756 (S.D.N.Y. 2006) (citing <u>Iwachiw v. N.Y. City Bd. of Educ.</u>, 194 F. Supp. 2d 194, 208 (E.D.N.Y. 2002)).

As set forth above, this action is not duplicative of the State Court Action. While the parties' submissions reveal that the Ratners and Robinson have been involved in numerous proceedings in the state courts, Robinson and Shapiro have failed to establish a history or pattern of vexatious or harassing litigation that would warrant restricting these pro se litigants from accessing this Court. Accordingly, Robinson's and Shapiro's requests that the Ratners be enjoined from commencing any future legal action without leave of court is DENIED.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to CONSOLIDATE Ratner v. Robinson, et. al., No. 13-CV-6278, and Ratner v. Robinson, et. al., No. 14-CV-7337. All future filings are to be docketed in the earlier case number, 13-CV-6278, and the Clerk of the Court is directed to mark case number 14-CV-7337 CLOSED. Upon consolidation, the Clerk of the Court is directed to add the Complaint in Case No. 14-CV-7337, (Docket Entry 1), on the docket in Case No. 13-CV-6278.

Robinson's and Shapiro's motions to dismiss the Cary Ratner Amended Complaint are GRANTED and all of Cary Ratner's claims against Robinson and Shapiro are DISMISSED WITH PREJUDICE. Cary Ratner's only remaining claims are against the County Defendants for false arrest, malicious prosecution, abuse of process, and municipal liability pursuant to Section 1983, as well

as related state law claims sounding in negligence, false arrest, malicious prosecution, and fraud.

Robinson's and Shapiro's motions to dismiss the Seth Ratner Complaint are GRANTED IN PART AND DENIED IN PART. Seth Ratner's claims against Robinson and Shapiro pursuant to Section 1983 and for negligence, false arrest, and fraud are DISMISSED WITH PREJUDICE. Seth Ratner's claim against Shapiro for malicious prosecution is DISMISSED WITHOUT PREJUDICE and with leave to replead. If Seth Ratner wishes to replead these claims, he must do so within thirty (30) days of the date of this Memorandum and Order. If he fails to do so, his malicious prosecution claim against Shapiro will be dismissed with prejudice. Seth Ratner's claim against Robinson for malicious prosecution remains, as do his claims against the County Defendants.

Robinson's and Shapiro's motions for sanctions are DENIED.

[BOTTOM HALF OF PAGE INTENTIONALLY LEFT BLANK]

Given Plaintiffs' pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed mail a copy of this Order to pro se Plaintiffs.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      November __10__, 2015
            Central Islip, New york